Mark A. PHIPPS, Appellant,

v.

CLARK OIL & REFINING
CORPORATION, et al.,
Respondents.

No. Cl–86–795.

Court of Appeals of Minnesota.

Nov. 18, 1986.
Review Granted Jan. 21, 1987.

Randy V. Thompson, Smith, Persian, MacGregor & Thompson, Minneapolis, for appellant.

Thomas B. Hatch, Robins, Zelle, Larson & Kaplan, Minneapolis, for respondents.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

This appeal is from a judgment on the pleadings in an action by an employee against his employer for wrongful discharge and defamation. The trial court held that Minnesota law does not recognize a public policy exception to the employment-at-will doctrine. The court found that the statement made by the employer explaining appellant's discharge was not defamatory as a matter of law and had been admitted by the allegations of the complaint. The court denied appellant's request to amend his complaint to allege malice. We reverse and remand.

## FACTS

The complaint sets forth the following facts: Mark A. Phipps was employed by Clark Oil Refining Corporation as a cashier at a self-service gas station. On November 17, 1984, a customer drove into the station and asked him to pump leaded gasoline into her 1976 Chevrolet—an automobile equipped to receive only unleaded gasoline. Phipps' manager, respondent Leroy Chmielewski, told Phipps to comply with the customer's request, but Phipps refused, believing that dispensing leaded gasoline into the gas tank was a violation of law. *See* Clean Air Act, 42 U.S.C. §§ 7401–7642. Phipps was willing to pump *un*leaded gas into the customer's automobile; nevertheless, Chmielewski immediately fired him.

In response to an inquiry by the Minnesota Pollution Control Agency, Clark Oil's management stated that Phipps was fired because he had been rude to customers on several occasions and "may have refused to provide full service to a handicapped customer."

Phipps brought this action against his employers (referred to collectively as Clark Oil), seeking damages for wrongful termination and defamation. Clark Oil moved for judgment on the pleadings. Phipps requested leave to amend his complaint to

allege malice, because Clark Oil claimed a qualified privilege in their answer. The trial court granted Clark Oil's motion, stating that Minnesota law allowed Phipps, an employee-at-will, to be terminated for any reason or for no reason. The court found that the statement explaining Phipps' discharge was not defamatory as a matter of law because it was not the type of statement which tended to injure Phipps' reputation in the community. Further, the court held that Phipps had, by the allegations in his complaint, admitted the truth of the statement. The court denied Phipps' motion to amend his complaint. Phipps appeals.

### ISSUES

1. Does Minnesota law recognize a cause of action for wrongful discharge if an employee is terminated for refusing to violate a law?

2. Does the employer's statement that employee "may have refused to provide full service to a handicapped customer" give rise to a claim for defamation?

### ANALYSIS

*A.   Employment-at-Will Doctrine and the Public Policy Exception*

The parties concede that there is no formal agreement governing the employment relationship between Phipps and Clark Oil. Thus, Phipps is an at-will employee.[1] The at-will employment doctrine in Minnesota is generally traced to the early case of *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 266 N.W. 872 (1936). The *Skagerberg* court interpreted a contract for permanent employment as being merely a contract for employment at will. *Skagerberg* set forth the general rule in Minnesota that employment at will "may be terminated by either party at any time, and no action can be

sustained in such case for a wrongful discharge." *Id.* at 301–02, 266 N.W. at 877 (quoting *Minter v. Tootle, Campbell Dry Goods Co.,* 187 Mo.App. 16, 27–28, 173 S.W. 4, 8 (1915)).

The employer's absolute right of discharge has been tempered during the last 50 years. The majority of jurisdictions have adopted, and numerous commentators have advocated, exceptions to the employment-at-will doctrine. Three general exceptions have been judicially created to relieve employees from the strict application of the employment-at-will doctrine:

(1) a contract cause of action based on implied-in-fact promises of employment conditions, generally derived from personnel manuals;

(2) an implied covenant of "good faith and fair dealing" under both contract and tort theories; and

(3) a "public policy" exception, based in tort, which permits recovery upon the finding that the employer's conduct undermines some important public policy.

Although the Minnesota Supreme Court has declined to imply a covenant of good faith and fair dealing into every employment contract, *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853 (Minn.1986), it has followed the modern trend in recognizing exceptions to employment at will. *Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876, 882–83 (Minn.1986).

In *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983), the supreme court recognized the implied-in-fact contract exception. The *Pine River* court held that an employee manual may constitute an employment contract with enforceable terms preventing termination at will. *See also Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114 (Minn.1981) (promissory

---

**1.**  Employees in the United States have disparate levels of protection from the risk of wrongful discharge by employers. Those covered by collective bargaining agreements and those employed by federal or state governments generally can be discharged only for "just cause." In contrast, approximately two-thirds of the Ameri-

can work force is governed by a common law rule that presumes their employment to be terminated at will. *Note* Protecting at Will Employees against Wrongful Discharge: The Duty to Terminate Only in Good Faith. 93 Harvard L.Rev. 1816 (1980).

estoppel principles provide cause of action for terminated at-will employee); *Bussard v. College of St. Thomas, Inc.,* 294 Minn. 215, 200 N.W.2d 155 (1972) (material issue of fact existed as to whether parties had oral agreement of permanent employment under unique facts of case).

Among other states, the most widely adopted exception to the doctrine is the public policy exception. Simply stated, the exception provides that an employer becomes subject to tort liability if its discharge of an employee contravenes some well-established public policy. Although the adoption of this exception has not been addressed in Minnesota, the majority of jurisdictions recognize this exception to the employment-at-will doctrine.[2]

The exception began as a narrow rule permitting employees to sue their employers when a statute expressly prohibited their discharge. The rule later expanded to include any discharge in violation of a statutory expression of public policy. The broadest formulation of the rule permits recovery even in the absence of a specific statutory prohibition. *See Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 376, 710 P.2d 1025, 1031 (1985); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 871 (Mo.Ct.App.1985); *Brockmeyer v. Dun &*

2. At least 25 jurisdictions have adopted the public policy exception. *See, e.g., Knight v. American Guard & Alert, Inc.,* 714 P.2d 788 (Alaska 1986); *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985) (termination for refusal to commit an act which might constitute indecent exposure); *Petermann v. International Brotherhood of Teamsters,* 174 Cal. App.2d 184, 344 P.2d 25 (1959) (discharge for refusing to commit perjury); *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980) (termination for insisting employer comply with food and drug laws); *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 652 P.2d 625 (1982) (tort adopted); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977) (recognizing tort, but inapplicable to facts of case); *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) (discharge for supplying information to police in a criminal investigation of a co-employee); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973) (discharge for filing workers' compensation claim); *Brown v. Physicians Mutual Insurance Co.,* 679 S.W.2d 836 (Ky.App.1984); (employee discharged after reporting improper conduct of fellow employee to employer and state insurance commission); *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981) (tort adopted but no cause of action on facts of case); *Trombetta v. Detroit, Toledo & Ironton Railroad Co.,* 81 Mich.App. 489, 265 N.W.2d 385 (1978) (refusal to illegally alter pollution control reports); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859 (Mo.Ct.App.1985) (termination for insisting that employer comply with FDA regulations concerning the testing of eyewear); *Keneally v. Orgain,* 606 P.2d 127 (Mont.1980) (no wrongful discharge on facts of case, but tort recognized); *Cloutier v. Great Atlantic & Pacific Tea Co.,* 121 N.H. 915, 436 A.2d 1140 (1981) (adopting tort); *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980) (tort adopted but inapplicable to facts of case); *O'Sullivan v. Mallon,* 160 N.J.Super. 416, 390 A.2d 149 (1978) (refusal to perform medical procedure for which employee was not licensed); *Vigil v. Arzola,* 102 N.M. 682, 699 P.2d 613 (Ct.App.1983) (tort adopted); *Sides v. Duke Hospital,* 74 N.C.App. 331, 328 S.E.2d 818 (1985), *rev. denied,* 314 N.C. 331, 333 S.E.2d 490 (1985) (termination for refusal to testify falsely or incompletely at medical malpractice trial); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975) (discharge for absence due to jury duty); *Reuther v. Fowler and Williams Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (discharge for performing jury duty); *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985) (termination for honoring subpoena request to appear before grand jury investigating employer anti-trust violations); *Clanton v. Cain-Sloan Co.,* 677 S.W.2d 441 (Tenn.1984) (public policy exception recognized where employee is discharged for filing worker's compensation claim); *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985) (refusal to illegally pump bilges of boat into water); *Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797 (1985) (employee-shareholder discharged for questioning improper manner in which proxies were obtained for proposed merger); *Thompson v. St. Regis Paper Company,* 102 Wash.2d 219, 685 P.2d 1081 (1984) (termination for instituting accounting practices to comply with the Foreign Corrupt Practices Act); *Harless v. First National Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978) (refusal to violate consumer protection law); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983) (no cause of action on facts stated, but tort adopted). *See also Gram v. Liberty Mutual Insurance Co.,* 384 Mass. 659, 429 N.E.2d 21 (1981) (recognizing tort). The seminal article on employment-at-will is Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum.L.Rev. 1404 (1967). Other leading scholarly works include Peck, *Unjust Discharges from Employment: A Necessary Change in the Law,* 40 Ohio St.L.J. 1 (1979).

*Bradstreet,* 113 Wis.2d 561, 571, 335 N.W.2d 834, 840 (1983).[3]

Courts have reached the public policy exception to accommodate competing interests of society, the employee, and the employer. The Illinois Court of Appeals stated:

> With the rise of large corporations conducting specialized operations and employing relatively immobile workers who often have no other place to market their skills, recognition that the employer and employee do not stand on equal footing is realistic. In addition, unchecked employer power, like unchecked employee power, has been seen to present a distinct threat to the public policy carefully considered and adopted by society as a whole. As a result, it is now recognized that a proper balance must be maintained among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out.

*Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 129, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981) (citation omitted).

These courts have also recognized that important societal interests oppose an employer's conditioning employment on required participation in unlawful conduct:

> Although employers generally are free to discharge at-will employees with or without cause at any time, they are not free to require employees, on pain of losing their jobs, to commit unlawful acts or acts in violation of a clear mandate of public policy expressed in the constitution, statutes, and regulations promulgated pursuant to statute. The at-will employment doctrine does not depend upon the employer having such a right. The employer is bound to know the public policies of the state and nation as expressed in their constitutions, statutes, judicial decisions and administrative regulations, particularly, as here, those bearing directly upon the employer's business.

> \* \* \* \* \* \*

> The at-will employment doctrine does not include, contemplate or require a privilege in the employer to subject its employees to the risks of civil and criminal liability that participation in such activities entails.

*Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 877–78 (Mo.Ct.App.1985).

We find the reasoning of the cases adopting a public policy exception to be persuasive. An employer's authority over its employee does not include the right to demand that the employee commit a criminal act. An employer therefore is liable if an employee is discharged for reasons that contravene a clear mandate of public policy.

Employers may have a legitimate concern that such an exception will allow fraudulent or frivolous suits by disgruntled employees who are discharged for valid reasons. In order to prevent this, the employee should have the burden of proving the dismissal violates a clear mandate of public policy, either legislatively or judicially recognized. Once the employee has demonstrated that the discharge may have been motivated by reasons that contravene a clear mandate of public policy, the burden then shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee. *See Thompson v. St. Regis Paper Co.,* 102 Wash.2d at 232–33, 685 P.2d at 1089. This structure, obviously, is a tort-based analysis rather than a contract-based analysis. A significant difference between these theories is the measure of damages. From

---

**3.** For excellent discussions of the history of the at-will doctrine, *see Wagenseller,* 147 Ariz. 370, 710 P.2d 1025; *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 652 P.2d 625 (1982); *Sides v. Duke Hospital,* 74 N.C.App. 331, 328 S.E.2d 818 (1985); *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983).

the standpoint of damages and the conceptual framework which supports the action, we believe it is properly based in tort.[4]

We also believe the reasons supporting recognition of the public policy exception are consistent with principles expressed by the Minnesota Supreme Court.[5] In *Lewis* the court characterized its decisions on exceptions to the employment-at-will doctrine as following the modern trend. Although recovery in *Lewis* was based on an implied contract theory, we believe that a public policy exception to the employment-at-will doctrine would assist in maintaining the integrity and limitations of other causes of action. *See Lewis*, 389 N.W.2d at 893 (Kelley, J., dissenting). Rather than attempting to reach a grievous wrong, repugnant to an ordered society, through the artificial expansion of other doctrines, it is preferable to recognize it in its individual posture.

Clark Oil argues that the decision to adopt the public policy exception should be left to the legislature, citing *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983), and *Hunt*, 384 N.W.2d at 859. In rejecting the implied covenant of good faith and fair dealing, the court in *Hunt* adverted to the problem of defining the amorphous concept of bad faith and the extent of the intrusion in imposing this concept on the employment relationship.

■ We see a public policy exception as significantly different from a covenant of good faith and fair dealing. A public policy exception can be reasonably defined by reference to clear mandates of legislative or judicially recognized public policy. In addition, courts have historically interpreted the effect of illegality on contracts. *See Vercellini v. U.S.I. Realty Co.*, 158 Minn. 72, 196 N.W. 672 (1924) (contract for sale of stock illegal when in violation of securities law); *Goodrich v. Northwestern Tele-*

phone *Exchange Co.*, 161 Minn. 106, 201 N.W. 290 (1924) (contract to purchase city council influence void as against public policy). The at-will doctrine is a creation of common law. Other exceptions to the doctrine have been considered and adopted or rejected by the courts. The judiciary may properly extend or limit a judicially created doctrine.

■ Clark Oil further argues that the Clean Air Act is a comprehensive statute which contains sufficient remedies to vindicate the public policies expressed in it. Thus, they claim that even if this court is the proper body to adopt the exception, this is not the proper case because Congress, by including other remedies in the Act, has precluded the creation of other remedies. Clark Oil contends that judicial creation of the exception would be contrary to the policy decisions evident in the Act, specifically noting an anti-retaliation provision and the applicable administrative procedure for the resolution of complaints of employer retaliation. They claim that these provisions indicate that Congress wished to encourage employees who report possible violations of the Act after having submitted to their employer's demands, rather than protecting employees who refuse to obey an employer's order which the employee believes to be a violation of the Act.

We disagree. By including specific remedies for violations of the Act, Congress did not preclude all other remedies. 42 U.S.C. § 7416 specifically allows a state to retain authority over air pollution matters, provided that its laws are at least as stringent as the standards under the Federal Act. Permitting a cause of action for wrongful discharge in a case such as this is not contrary to the policies expressed in the Act, since, in sanctioning the wrongful discharge, we will be advancing an already-de-

---

**4.** Although the issue is not before us, we do note the Minnesota Supreme Court's discussion of punitive damages in *Lewis*, 389 N.W.2d at 891–92.

**5.** Three of the four cases from sister jurisdictions relied on by the Minnesota Supreme Court

in rejecting the implied covenant of good-faith termination doctrine have, in the decisions cited by the court, adopted the public policy exception under varying standards. *See Hunt*, 384 N.W.2d at 858–59.

clared legislative public policy. *See Brockmeyer,* 335 N.W.2d at 842.

### B. *Application of the Public Policy Exception*

On appeal from a judgment on the pleadings, this court assumes as true all material facts which are well pleaded. *Grier v. Estate of Grier,* 252 Minn. 143, 145, 89 N.W.2d 398, 401 (1958). Phipps' complaint alleges that he was terminated for refusing to violate the Federal Clean Air Act, 42 U.S.C. §§ 7401–7642.

Clark Oil argues that this is not the proper case to apply this exception because the penalty for violating this provision is imposed only upon the retailer, not the retailer's employees or agent. 40 C.F.R. § 80.5, § 80.23(e)(1) (1984).

We hold that Phipps has stated a cause of action for wrongful termination under the public policy exception to the at-will employment doctrine. It is not determinative that the employee would not have suffered any monetary loss by violating the law. The law clearly states:

> [N]o retailer *or his employee* * * * shall introduce or allow the introduction of leaded gasoline into any motor vehicle which is labeled "unleaded gasoline only," or which is equipped with a gasoline tank filler inlet which is designed for the introduction of unleaded gasoline.

40 C.F.R. § 80.22(a) (1984) (emphasis added).

### C. *Defamation*

The second count of Phipps' complaint alleged that his employer defamed him by informing the MPCA that he had been terminated for rudeness and because he "may have refused to provide full service to a handicapped customer." The trial court held that the statement was not defamatory as a matter of law, because it was not the kind of statement which would tend to harm the plaintiff's reputation and to lower him in the estimation of the community and that Phipps admitted the truth of the statement.

In determining whether a statement is defamatory, the court must look to the nature and obvious meaning of the language in its plain and ordinary sense, construing it as a whole, including innuendos reasonably laid from the statement. *Tawney v. Simonson, Whitcomb, & Hurley Co.,* 109 Minn. 341, 124 N.W. 229 (1909). The statement is libelous per se if it affects plaintiff in his business, trade, profession, office or calling. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980).

Phipps points to Minnesota's strong public policy embodied in Minn.Stat. ch. 363 protecting handicapped persons. He argues that the plain meaning of Clark Oil's statement is that he refused service to the customer *because* she was handicapped, implying that he is a bigot. Phipps further claims that the statement is libelous per se because it refers to his conduct in his trade. We agree that the statement describes an act relating to Phipps' employment. Although Phipps admitted in his complaint that he refused to service the customer's automobile, he did not admit that the customer was handicapped, nor does he admit he refused to provide service to the customer because she was handicapped. Truth is a defense to defamation only when the underlying implication of the statement is true, not merely when the statement is verbally accurate. *Lewis,* 389 N.W.2d at 889 (we note that *Lewis* was decided substantially after the trial court's decision in this case).

We believe there are significant fact issues underlying the defamation claim which remain in dispute. Clark Oil is not entitled to a judgment on the pleadings. *See Chilson v. Travelers Insurance Co.,* 180 Minn. 9, 230 N.W. 118 (1930).

Phipps also claims that the trial court erred in denying his request to amend his pleadings to allege malice in response to the allegation of privilege contained in Clark Oil's answer. Under Clark Oil's claim of a qualified privilege, an untrue defamatory statement, even if published, is not actionable if the originator made the statement upon a proper occasion, from

a proper motive, and based upon reasonable cause. *Lewis,* 389 N.W.2d at 889 (citing *Stuempges,* 297 N.W.2d at 256–57); *see also Frankson v. Design Space International,* 394 N.W.2d 140 (Minn.1986). If the claim of privilege is upheld, Phipps must prove actual malice on behalf of his employer to recover any damages caused by the statement.

The trial court did not directly address Phipps' request to amend his complaint because it had determined that the statement was not defamatory as a matter of law. Minn.R.Civ.P. 15.01 provides in pertinent part:

A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty days after it is so served. Otherwise a party may amend his pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

 Phipps argues that since he is not entitled, as a matter of right, to a responsive pleading to an answer, the simplest way to correct any deficiency in the pleadings is to amend the complaint to allege malice in response to Clark Oil's claim of privilege. In *United States Fidelity & Guaranty Co. v. Falk,* 214 Minn. 138, 7 N.W.2d 398 (1943), in which judgment on the pleadings was entered after plaintiff amended his complaint and before defendant answered the amended complaint, the court stated:

It is fundamental, as it is a matter of orderly procedure, that a party should be entitled to formulate and present by appropriate pleading what he claims the facts to be and to meet his opponent's assertions by his own proof. Before judgment is entered against him this right should be accorded him.

*Id.* at 141–42, 7 N.W.2d at 400.

Clark Oil has not shown that it would be prejudiced if Phipps is allowed to amend his pleadings. *Wilson v. City of Eagan,* 297 N.W.2d 146, 151 (Minn.1980). Phipps should be permitted to amend his complaint to allege malice.

## DECISION

Complaint which alleges that an at-will employee was terminated for refusing to violate a law states a cause of action in Minnesota for wrongful discharge. The trial court's holding that employer's statement was not defamatory as a matter of law is reversed. Appellant may amend his complaint to allege malice in response to his employer's claim of a qualified privilege.

Reversed and remanded.