Mark A. PHIPPS, Respondent,

v.

CLARK OIL & REFINING
CORPORATION, et al.,
Petitioners, Appellants.

No. C1–86–795.

Supreme Court of Minnesota.

June 26, 1987.

Thomas Hatch, Minneapolis, for appellants.

Randy V. Thompson, Gary Persian, Minneapolis, for respondent.

## OPINION

SCOTT, Justice.

Mark A. Phipps commenced this action in Hennepin County District Court in September, 1985. In their answer defendants, Clark Oil & Refining Corporation (Clark Oil) and Leroy Chmielewski, asserted that the complaint failed to state a claim upon which relief could be granted. On December 16, 1985, defendants moved for judgment on the pleadings pursuant to Rule 12.03 of the Minnesota Rules of Civil Procedure. The trial court granted defendants' motion and, on February 11, 1986, judgment was entered in favor of the defendants, and Phipps' complaint was dismissed with prejudice. Phipps appealed to the Minnesota Court of Appeals. That court reversed and remanded. The defendants then petitioned for further review, which was granted.

Phipps was employed as a cashier at a service station in Brooklyn Park, Minnesota, owned and operated by Clark Oil & Refining Corporation. Clark Oil employs Leroy Chmielewski as manager at that station. Phipps claims that on November 17, 1984, a customer requested that leaded gasoline be dispensed into her 1976 Chevrolet and Chmielewski directed him to do so. Phipps allegedly refused to dispense leaded gasoline into the vehicle "because the dispensing of leaded gasoline into said vehicle was in violation of federal law and regulations." Phipps maintains that he was at all times willing to dispense unleaded gasoline into the vehicle. Phipps was terminated from his employment, allegedly as a result of his refusal to dispense leaded gasoline into this vehicle.

Phipps also alleges that the defendants wrongfully stated to state administrative agencies that he was terminated for being rude to customers and for failing to provide proper service to a handicapped customer. Phipps claims, as Count II of his complaint, that this statement was libelous. Defendants, however, assert that the statement was privileged. Phipps sought to amend his complaint to allege malice, which could defeat a qualified privilege, but the trial court denied him permission to amend.

This case presents the following questions:

(1) Does an at-will employee who is terminated for refusing to violate a law have a cause of action for wrongful discharge?

(2) Does an employer's statement that the employee was terminated because "he may have refused to provide full service to a handicapped customer" give rise to a claim for defamation?

① The court of appeals reversed the trial court's judgment on the pleadings and held that when an employer discharges an employee "for reasons that contravene a clear mandate of public policy," the employee has a cause of action for wrongful discharge. *Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588, 592 (Minn.App. 1986). Clark Oil argues that this court should reverse the court of appeals and

defer to the legislature for any changes in the at-will employment doctrine.

Since oral argument, the legislature has enacted Minn.Stat. § 181.932, subd. 1, which provides in part:

An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

\*    \*    \*    \*    \*    \*

(c) the employee refuses to participate in any activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law.

Therefore, we no longer have before us the policy question of whether or not Minnesota should join the three-fifths of the states that now recognize, to some extent, a cause of action for wrongful discharge. *See* Lopatka, *The Emerging Law of Wrongful Discharge—A Quadrennial Assessment of the Labor Law Issue of the 1980's*, 40 Bus.Law. 1, 1 (1984). The only question that remains is whether we should uphold the court of appeals' decision applying this public policy exception to the November 17, 1984, discharge of Phipps.

■ Phipps claims that his discharge violates the public policy of the Clean Air Act, 42 U.S.C. § 7401 *et seq.* (1983) and the regulations thereunder, 40 C.F.R. § 80.1–.26 (1984). These regulations, specifically § 80.22(a) (1984), make it illegal for any retailer or his employee to introduce leaded gasoline into a vehicle designed for unleaded gasoline. Phipps alleges that this was what Chmielewski told him to do and that his refusal was the reason for his termination. This case is similar to *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), *cert. denied,* — U.S. —, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986), in which the Illinois Supreme Court held that an employee who refused to work with radioactive materials that were not handled in accordance with federal regulations could sue for wrongful discharge under the public policy exception.

*Wheeler,* 108 Ill.2d at 509–11, 485 N.E.2d at 376–77. That court stated:

The protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence, and by the enactment of the legislation cited [Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.*], Congress has effectively declared a clearly mandated public policy to that effect.

*Id.* at 511, 485 N.E.2d at 377. *See also Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 378, 710 P.2d 1025, 1033 (1985); *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 224, 337 S.E.2d 213, 215 (1985). The Clean Air Act is similarly a clearly mandated public policy to protect the lives of citizens and the environment, and we hold that an employee may bring an action for wrongful discharge if that employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law.

■ Clark Oil argues that the remedies of the Clean Air Act are sufficient to vindicate the underlying public policy. The act does protect from retaliatory discharge those employees who violate the law at their employer's direction and then report the employer's violation. *See* 42 U.S.C. § 7622. Phipps suggests that it is illogical to require an employee to pollute before giving him any job protection. While the federal scheme protects the "whistleblower," other courts have held that their common law also protects those fired for their refusal to violate the law. *See, e.g., Wheeler,* 108 Ill.2d at 510, 485 N.E.2d at 376; *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 876–77 (Mo.App.1985); *Sabine Pilot Serv. v. Hauck,* 687 S.W.2d 733, 735 (Tex. 1985); *But see Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1055 (E.D.Pa.1977). We agree.

■ Clark Oil also claims that the court of appeals improperly allocated the burden of proof. That court stated:

[T]he employee should have the burden of proving the dismissal violates a clear

mandate of public policy, either legislatively or judicially recognized. Once the employee has demonstrated that the discharge may have been motivated by reasons that contravene a clear mandate of public policy, the burden then shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee. *See Thompson v. St. Regis Paper Co.*, 102 Wash.2d [219] at 232–33, 685 P.2d [1081] at 1089.

*Phipps*, 396 N.W.2d at 592. The procedure suggested by the court of appeals is that used in Title VII actions, *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 260, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981), where after the plaintiff has demonstrated that the action may have been motivated by discrimination, the burden of *production* shifts to the defendant to articulate a nondiscriminatory reason. The plaintiff, however, retains the burden of proof—the risk of nonpersuasion. *Phipps*, 396 N.W.2d at 592. *See Parnar v. Americana Hotels, Inc.*, 65 Hawaii 370, 380, 652 P.2d 625, 631 (1982) ("Of course, the plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy."); *Sabine*, 687 S.W.2d at 735 ("We further hold that in the trial of such a case it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act."). We agree and hold that after the plaintiff has demonstrated that his discharge may have been motivated by his good faith refusal to violate the law, the burden of production shifts to the defendant to articulate another reason for the discharge. To prevail, however, the plaintiff must prove, by a preponderance of the evidence, that the discharge was for an impermissible reason.

Clark Oil also asks this court to hold that punitive damages are not available in actions under the public policy exception. It bases this request on this court's holding in *Lewis v. Equitable Life Assurance Society of the United States*, 389 N.W.2d 876 (Minn.1986), that punitive damages should not be available for a newly recognized cause of action. *Id.* at 892. In *Lewis*, we

based our holding on Minn.Stat. § 549.20 (1986) and the lack of deterrent effect of punitive damages in a compelled self-publication case. *Id.*

Minnesota Statutes § 549.20, subd. 1, provides: "Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." The "concern of the legislature [in 1978 when it enacted Minn.Stat. § 549.20] was to limit the frequency and amounts of punitive damages awards." *Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Ass'n*, 294 N.W.2d 297, 311 (Minn. 1980). In addition to the legislative intent, we evaluated a variety of policy considerations, including: "'the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent.'" *Lewis*, 389 N.W.2d at 892 (quoting *Scott v. Plante*, 641 F.2d 117, 135 (3d Cir.1981)).

These factors weigh differently in a public-policy exception case than in a compelled self-publication one. The nature of the conduct—firing an employee for refusing to follow orders to violate a law—has been condemned by other courts. The South Carolina Supreme Court has stated: "In a nation of laws the mere encouragement that one violate the law is unsavory; the threat of retaliation for refusing to do so is intolerable and impermissible." *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985). We have also recognized that pecuniary, punitive damages are appropriate when otherwise wrongs may go unredressed. *See Wilson v. City of Eagan*, 297 N.W.2d 146, 150 (Minn.1980) ("[C]itizens and attorneys are not likely to take action to redress the wrongs where the actual compensatory damages would be low. Punitive damages are, therefore, appropriate for such cases.").

■ Courts in other jurisdictions have also concluded that punitive damages would have a deterrent effect in public policy exception cases. *See, e.g., Hansen*

*v. Harrah's*, 675 P.2d 394, 397 (Nev.1984) ("[T]he threat of punitive damages may be the most effective means of deterring conduct which would frustrate the purpose of our * * * laws"). Even though they concluded that punitive damages were appropriate for this cause of action, several courts have declined to impose them in the case in which they recognized the public policy exception because "the employer [in this case] could not have anticipated beforehand that the claim would even be actionable." *Vigil v. Arzola*, 102 N.M. 682, 690, 699 P.2d 613, 621 (App.1983), *rev'd in part on other grounds*, 101 N.M. 687, 687 P.2d 1038 (1984); *see Nees v. Hocks*, 272 Or. 210, 220–21, 536 P.2d 512, 517 (1975). We agree, and hold that punitive damages will not apply to this action.

■ 2. We have stated that "[i]n order for a statement to be considered defamatory it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). Clark Oil claims that neither the second nor the third element is present. It claims that Phipps has admitted the truth of the statement, and that since truth is a complete defense, *see id.* at 255, it cannot be liable for defamation. The trial court agreed and stated in his memorandum that "plaintiff acknowledges by the allegations in his complaint that the statement was true."

Phipps disputes the trial court's conclusion. He did not admit in his complaint that the customer was handicapped, or that he refused her service because she was handicapped or, indeed, that he refused her service. In fact, he alleged in his complaint that he did not refuse her service; that "[a]t all times, plaintiff was willing to dispense unleaded gasoline into the subject vehicle." Phipps claims that Clark's statement is defamatory because it implies that he discriminated against a customer because she was handicapped. Since "[r]equiring that truth as a defense go to the underlying implication of the state-

ment, at least where the statement involves more than a simple allegation, appears to be the better view," *Lewis v. Equitable Life Assurance Society of the United States*, 389 N.W.2d 876, 889 (Minn.1986), Clark Oil cannot prevail on a motion for judgment on the pleadings if the statement may be defamatory if false.

A statement is defamatory when it "tend[s] to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation." *The Church of Scientology of Minnesota v. Minnesota State Medical Ass'n Foundation*, 264 N.W.2d 152, 155 (Minn.1978) (citing *Gadach v. Benton County Co-op Ass'n*, 236 Minn. 507, 53 N.W.2d 230 (1952)). Phipps claims that the statement "bears the heavy innuendo, if not the plain meaning, that plaintiff discriminated against a person because she was handicapped."

Generally, "[w]ords may be divided into those that cannot possibly have a defamatory meaning; those that are reasonably susceptible to a defamatory meaning as well as an innocent one; and those that are clearly defamatory on their face." *Church of Scientology*, 264 N.W.2d at 155. When determining in which of these categories the language of the alleged libel falls, "courts must give it its obvious and natural meaning." *Id.* Clearly, the plaintiff has the burden of proving that the statement was defamatory, but it does not appear from the pleadings that the statement is one that could not possibly have a defamatory meaning; therefore, judgment on the pleadings is inappropriate. *See Chilson v. Travelers' Ins. Co.*, 180 Minn. 9, 230 N.W. 118 (1930); *Ryan v. Lodermeier*, 387 N.W.2d 652, 653 (Minn.App.1986).

Clark Oil also claims that its communication was conditionally privileged because it was a response to an inquiry by a legitimately interested party. In Minnesota a communication, to be privileged, "must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause," *Stuempges*, 297 N.W.2d at 256–57 (quoting *Hebner v. Great N. Ry.*, 78 Minn. 289, 292, 80 N.W.

1128, 1129 (1899)), and it appears that Clark Oil's statement, which was made in response to an inquiry from the Minnesota Pollution Control Agency, may be qualifiedly privileged. If the statement is qualifiedly privileged, that privilege is lost if it is abused. *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144 (Minn.1986); *Stuempges*, 297 N.W.2d at 257. "Thus, once the defendant has demonstrated the existence of a conditional privilege, the burden shifts to plaintiff to prove that the privilege was abused, which is generally a question for the jury." *Id.* (citations and footnote omitted).

In his memorandum in response to Clark Oil's motion for judgment on the pleadings, Phipps requested leave to amend his pleadings to allege malice, which would defeat the privilege. The trial court denied this request, stating: "In view of this Court's holding that the statement was not disparaging as a matter of law and is true by virtue of plaintiff's own allegations, the request for permission to amend paragraph is not well taken," and granted Clark Oil judgment on the pleadings.

The court of appeals, however, held that the statement could be defamatory and that Phipps did not admit its truth, and, therefore, reversed the judgment. *Phipps*, 396 N.W.2d at 594. We agree and affirm. The court of appeals also believed that Phipps should be allowed to amend his complaint to allege malice, which if proven would defeat Clark Oil's qualified privilege. *Id.* at 595. Clark Oil does not claim that it would be prejudiced by the amendment, *see Wilson v. City of Eagan*, 297 N.W.2d 146, 151 (Minn.1980), but rather that the issue of amendment is not properly before this court because Phipps did not bring his "request" in the form of a motion and the trial court did not "rule" on whether leave should be granted. We do not agree, and direct that leave to amend be granted.

Affirmed.