David C. PARTEN, Appellee,

v.

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, Appellant.**

No. 89–5137.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1989.

Decided Jan. 9, 1991.

Andrew Clark, Minneapolis, Minn., for appellant.

Paul Cady, St. Paul, Minn., for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and WEBB,* District Judge.

WEBB, District Judge.

Consolidated Freightways Corporation (CF) appeals the district court's [1] denial of its motions for a directed verdict or judgment notwithstanding the verdict or in the alternative for a new trial. David Parten was awarded $82,948 in compensatory damages when the jury determined he had prevailed on his claim of wrongful discharge in violation of Minnesota public policy. The most important issue before this court is whether the claim arising under Minnesota law is preempted by federal law in the area of interstate motor carriers. CF raises two additional issues, whether the district court properly instructed the jury and whether

---

* The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota, sitting by designation.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

there is sufficient evidence to support the jury verdict. We affirm the district court.

## I.

Parten worked for CF as shop foreman in its Blaine, Minnesota, terminal, a service and maintenance facility for CF's trucks and trailers. Parten was directly responsible for maintaining the trucks and trailers in order to ensure their safe and efficient operation. He claims that his immediate supervisor, Joe Sarne, and others pressured him to move trucks and trailers out of the maintenance shop at the expense of safety. Parten also testified that he was asked to falsify and forge maintenance and service documents to avoid internal audit exceptions which directly affected the bonuses of the Blaine terminal management. Parten objected to these practices. He was terminated March 30, 1987.

CF justifies Parten's discharge by claiming that: 1) he was unable or unwilling to communicate with other departments or the employees he supervised, 2) he slept on the job, and 3) he was occasionally late for work or missed scheduled work times. CF placed Parten on marginal status four times during his term of employment.

CF asserts that Section 405 of the Surface Transportation Assistance Act preempts Parten's cause of action based on a violation of Minnesota public policy. The Surface Transportation Assistance Act (STAA) was enacted in 1983. The Act provides comprehensive legislation over motor vehicles. It was enacted pursuant to Congress' power under the Interstate Commerce Act.

Section 405 established a system under which certain employees of motor carriers could pursue remedies for unlawful discharge arising out of safety matters associated with the operations of motor carriers.[2] The Act provides protection for employees by prohibiting discharge if an employee files a complaint with the Secretary of Labor, initiates other proceedings, or has apprehension of serious bodily injury to himself or the public due to unsafe equipment.[3] Parten did not file a complaint with the Secretary of Labor. Rather, Parten filed claims against CF in federal court for wrongful discharge.[4]

Parten claimed that his discharge violated Minnesota public policy because he was discharged for refusing to violate state and federal safety regulations. Minnesota's public policy is codified at section 181.932 of the Minnesota Statutes Annotated.[5]

2. This type of legislation is promulgated in part to protect whistle blowers.

3. Section 2305 of Title 49 App., United States Code was promulgated pursuant to section 405 of the STAA. Section 2305 provides in pertinent part:
    (a) No person shall discharge, discipline, or in any manner discriminate against any employee ... because such employee ... has filed any complaint or instituted ... any proceeding relating to a violation of a commercial motor vehicle safety rule, ...
    (b) No person shall discharge ... an employee ... because of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment....
    (c)(1) Any employee who believes he has been discharged, ... in violation of subsection (a) or (b) of this section may, within one hundred and eighty days ... file ... a complaint with the Secretary of Labor....

4. Parten had also filed an ERISA claim which was dismissed at the beginning of trial and a breach of contract claim which was dismissed after the close of evidence.

5. 181.932 Disclosure of information by employees.

    Subdivision 1. Prohibited action. An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
    (a) the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
    (b) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry; or
    (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.
Minn.Stat.Ann. § 181.932.

CF maintains that, because the transportation industry is heavily regulated and specific procedures are in place to deal with situations such as Parten's, federal law preempts the state law claim. In essence, CF maintains that Parten's *only* remedy was through section 405 of the STAA. The district court determined that federal regulation of the motor carrier safety area was not exclusive, therefore, Minnesota's remedy was not preempted.

## II.

■ An analysis under the Supremacy Clause of Article VI of the Constitution must start with the basic assumption that Congress did not intend to displace state law. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). The Supreme Court listed ways Congress may preempt state law under the Supremacy Clause.

Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519 [97 S.Ct. 1305, 51 L.Ed.2d 604] (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland,* 369 U.S. 663 [82 S.Ct. 1089, 8 L.Ed.2d 180] (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 [83 S.Ct. 1210, 10 L.Ed.2d 248] (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 [103 S.Ct. 2890, 77 L.Ed.2d 490] (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 [67 S.Ct. 1146, 91 L.Ed. 1447] (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52 [61 S.Ct. 399, 85 L.Ed. 581] (1941). Pre-emption may result not only

from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation. *Fidelity Federal Savings & Loan Assn. v. De la Cuesta,* 458 U.S. 141 [102 S.Ct. 3014, 73 L.Ed.2d 664] (1982); *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691 [104 S.Ct. 2694, 81 L.Ed.2d 580] (1984).

*Louisiana Public Service Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). *See also Schweiss v. Chrysler Motors Corp.,* 922 F.2d 486 (8th Cir.1990) (*citing English v. General Electric Co.,* —— U.S. ——, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990)).

We need only address two methods of preemption. CF argues that Congress has occupied the field of regulation of interstate commerce through the commerce clause. CF also argues that the state statute is an obstacle to accomplishment of the purpose and objectives of Congress in regulating interstate commerce.

### A.

CF points to the pervasiveness of the regulation of interstate trucking through the Department of Transportation. CF cites an Eighth Circuit decision wherein this court held that the Interstate Commerce Act "so pervasively occupies the field of railroad governance that it completely preempts Deford's state law claims." *Deford v. Soo Line RR,* 867 F.2d 1080, 1088 (8th Cir.1989) *cert. denied* —— U.S. ——, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). In *Deford* this court held that the Interstate Commerce Act was an appropriate basis to preempt the state law claims. *Deford* involved an action by employees adversely affected by a sale of a portion of the Soo Line's rail lines. This court concluded that the Railway Labor Act pervasively occupies the field of railroad labor disputes. *Id.* at 1085. However, an ambitious scheme for regulation does not necessarily mean that common law rights are preempted. *See Kerr v. First Commodity Corp.,* 735 F.2d 281, 288 (8th Cir.1984)

(holding that the Commodities Exchange Act did not preempt common law fraud actions permitting punitive damage awards).

The Supreme Court in *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n.,* 461 U.S. 190, 205, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), held that "the Federal Government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the States." Yet, in *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), the Supreme Court allowed an award of punitive damages to stand pursuant to state law concerning radiation safety. The Court stated:

> No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a State may nevertheless award damages based on its own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension there was between them.

*Silkwood,* 464 U.S. at 256, 104 S.Ct. at 625.

Although Congress has heavily regulated the field of interstate motor carriers, it has not excluded all state regulation.

### B.

CF contends that Minnesota state law is an obstacle to the accomplishment of the full purpose of Congress. The Surface Transportation Assistance Act has two objectives according to CF. The first is protection of employees by prohibiting discharge if the employee files a complaint or objects to unsafe conditions in equipment. The second objective, according to CF, is the exclusive enforcement of safety through the Secretary of Labor who is to receive notice of any employee's complaint concerning discharge, discipline or discrimination.

Minnesota's statute does not conflict with the goal of protection of employees who are discharged for objecting to unsafe conditions. The statute provides an additional remedy for the employee who is retaliated against. We agree with the district court's assessment that the state remedy is a complementary remedy which does not conflict with section 405.

CF asserts that the state statute interferes with the uniformity of a national remedial scheme. CF contends that the complaint system through the Secretary of Labor enables quicker detection of potential safety problems. A similar argument was raised in *Silkwood,* 464 U.S. at 257, 104 S.Ct. at 626. There the Supreme Court found that the award of punitive damages pursuant to state law did not frustrate the purpose of the remedial scheme. *Id.* Likewise, subjecting an employer to both state and federal penalties for discharging an employee who refuses to violate a safety standard does not seem unreasonable. Although the Secretary of Labor may not have notice of all potential safety violations if employees are allowed to pursue state remedies, it seems too harsh to preclude an employee from seeking a state remedy for that reason alone.

We agree with the district court that the language of section 2305, promulgated pursuant to section 405 of the STAA, does not suggest that it was intended to be the exclusive remedy for employees who blow the whistle on commercial motor vehicle operators. Section 2305(a) offers protection for employees who have, "filed any complaint or instituted or caused to be instituted any proceeding" relating to the violation of a commercial motor vehicle safety rule. 49 U.S.C.App. § 2305(a). The Secretary of Labor may defer to the outcome of other proceedings, on a case by case basis. 29 C.F.R. § 1978.112.

We hold that Minnesota's statute is not preempted.

### III.

CF argues that the district court gave an erroneous jury instruction concerning the state cause of action for discharge in violation of public policy.

A cause of action for discharge in violation of public policy was recognized in Minnesota in *Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588 (Minn.Ct.App. 1986), *aff'd*, 408 N.W.2d 569 (Minn.1987). In the opinion, the court of appeals created an exception to the employment-at-will doctrine providing a cause of action to an employee discharged for "reasons that contravene a clear mandate of public policy." 396 N.W.2d at 592. The court of appeals decision was argued to the Minnesota Supreme Court. After oral argument but before the supreme court could issue an opinion the Minnesota Legislature enacted section 181.932 of the Minnesota Statutes which made it illegal for an employer to discharge an employee because:

. . . . .

(c) the employee refuses to participate in any activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law.

Minn.Stat.Ann. § 181.932(1)(c) (as enacted). The legislature subsequently amended the statute effective August 1, 1988.[6]

At trial the district court instructed the jury using the language of section 181.932 as enacted because it "effectively codified *Phipps.*" Memorandum Opinion and Order, Civil 4–87–595 (D.Minn. February 14, 1989). The Minnesota Court of Appeals' opinion was issued on November 18, 1986. Parten was discharged on March 30, 1987. The Minnesota Legislature enacted section 181.932 on May 11, 1987, just before the Minnesota Supreme Court affirmed *Phipps* on appeal.

CF's main contention is that the burden of proof used by the district court is different than that enunciated by the court of appeals in *Phipps*. The court's instruction No. 10 contains the burden of proof:

In order to prevail, plaintiff must prove by a preponderance of the evidence that plaintiff was discharged because he

refused to participate in activity he believed, in good faith, violated federal or state law or rules or regulations adopted pursuant to law.

If you find that plaintiff has demonstrated that his discharge may have been motivated by his refusal to participate in activity he believed, in good faith, to be unlawful, the burden of production of evidence shifts to the defendant to show it had some other reason or reasons for plaintiff's discharge.

Ultimately, for plaintiff to prevail, you must find that plaintiff has proved by a preponderance of the evidence that defendant would not have discharged plaintiff except for plaintiff's refusal to participate in activity that he, in good faith, believed to be in violation of federal or state law or rules or regulations adopted pursuant to law.

CF states that Parten may recover only if his discharge was for the sole reason that he refused to perform an unlawful act. CF draws this language from dicta in the *Phipps* opinion. We agree with the district court that this language is dicta and is not authority for CF's argument. The Minnesota Supreme Court stated that the plaintiff must prove "that the discharge was for an impermissible reason." *Phipps*, 408 N.W.2d at 572. The jury instruction adequately states the applicable law for Parten's cause of action.

## IV.

█ CF also asserts that the jury did not have sufficient evidence to find that Parten was discharged because he refused to obey a directive by the company to release unsafe trailers from the repair shop. We disagree.

In reviewing the district court's denial of CF's motion we apply the same standard as the district court. *Morgan v. Arkansas*

---

**6.** The August 1, 1988, amendment restricts the cause of action pursuant to part c of section 181.932(1) to those cases where:
  (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any

state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.
Minn.Stat.Ann. § 181.932(1)(c).

*Gazette,* 897 F.2d 945, 948 (8th Cir.1990). This standard requires that we:

> 1) consider the evidence in the light most favorable to [Parten], who prevailed with the jury; 2) assume that all conflicts in the evidence were resolved by the jury in [Parten's] favor; 3) assume as proved all facts which [Parten's] evidence tends to prove; 4) give [Parten] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and 5) affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from it.

*Id.* (*quoting Gilkerson v. Toastmaster,* 770 F.2d 133, 136 (8th Cir.1985)). We will only consider evidence favoring the nonmoving party and consider no evidence favoring the moving party because if we compared the evidence we would be assessing credibility. *See Morgan,* 897 F.2d at 948; *see also Dace v. ACF Industries,* 722 F.2d 374, 376 (8th Cir.1983). The jury was in the best position to assess credibility.

CF's main argument is that the safety concerns of Parten testified to at the trial are a recent fabrication. CF asserts that there is no direct evidence supporting Parten's claim. We are not in a position to assess the credibility of Parten's testimony. When reviewing his testimony a reasonable person could conclude that he was discharged because he refused a company directive to release unsafe trailers. We note that the district judge also had an opportunity to assess the credibility of Parten and did not overturn the jury verdict. We are satisfied that the credibility of the witnesses was properly assessed by the trier of fact.

### V.

We have considered each of the appellant's contentions which have been well-presented to this court, and we reject the arguments. CF is not entitled to a directed verdict, a judgment notwithstanding the verdict or alternatively a new trial. The district court is affirmed.