## IN RE APPLICATION FOR DISCIPLINE OF SYDNEY A. GROSS.

109 N. W. (2d) 57.

May 5, 1961—No. 38,286.

*Glen P. Powrie,* for petitioner.
*Sydney A. Gross,* pro se, for respondent.

PER CURIAM.

The Practice of Law Committee of the Minnesota State Bar Association has commenced this proceeding against Sydney A. Gross, an attorney at law in this state, and has requested that he be disbarred from the practice of law. By an order of this court the Honorable E. R. Selnes of the eighth judicial district was appointed referee to hear the accusations set forth in the petition, to report all evidence, and to make findings of fact in reference thereto. The respondent, Gross, interposed an answer to the petition and appeared in person and by attorney at the hearing conducted by the referee. After a hearing which lasted for 3 days, the referee made his findings of fact and recommended that the respondent be disbarred.

The respondent has informed this court that he does not wish to contest the matter further. He has not ordered a transcript or otherwise attempted to settle a case as provided for by Supreme Court

Rule XXI (222 Minn. xxxix). Accordingly, the findings of the referee are deemed conclusive.

The referee found that the respondent is 34 years of age and has been engaged in the practice of his profession in the cities of Minneapolis and St. Cloud, Minnesota, since December 5, 1949. The referee further reported that the respondent orally and by his pleadings has admitted the truth of all the charges made against him. There was evidence received by the referee which was found to establish the following facts:

### THE MURPHY MATTER

The referee found that in January or February 1959, a fellow lawyer in St. Cloud, one Thomas J. Murphy, entrusted to the care of the respondent the settlement of an estate matter in which he was personally interested. The case was settled in February 1959 for the sum of $8,500, which amount was promptly paid to the respondent. When Murphy inquired of the respondent on several occasions in February, March, and April of 1959, respondent concealed the fact that he had received the money. When Murphy finally learned that the amount of the settlement had been paid to Gross, he made a demand upon him and received a check for $5,583.86. This check was dishonored by the bank because of insufficient funds. It was necessary for Murphy to institute suit against Gross and his partner to secure payment of the amount which the respondent owed to him.

### MUTUAL SERVICE LIFE
### INSURANCE COMPANY LOAN

In May 1958 the respondent applied for a loan to the Mutual Service Life Insurance Company, which was to be secured by a mortgage upon certain real estate owned by him. The attorney for the mortgagee, relying on the good faith and honesty of the respondent, permitted him to prepare the mortgage papers, including title opinion. The respondent prepared for the signature of his fellow lawyer a title opinion which represented that there were no encumbrances or liens against the property except the mortgage to the Mutual Service Life Insurance Company. As a matter of fact, there was a mortgage on the property

which at the time of the preliminary title opinion had an unpaid balance of $5,224.41. When his fellow lawyer discovered that this mortgage had not been satisfied and confronted the respondent with the facts, the respondent readily admitted the deceit. From the findings it appears that the respondent conveyed to this attorney the property covered by the Mutual Service mortgage with authority to sell the property and pay all the liens thereon. Subsequently the property was sold and the liens paid.

### ROSALIE EWERS MATTER

In the spring of 1959 the respondent was retained by Martha Ewers to represent her in connection with a claim for personal injuries which her minor daughter, Rosalie, had sustained in an automobile accident. The respondent settled this claim for $8,000. In the order approving settlement dated May 20, 1959, the court provided that the sum of $5,629.93 be deposited by the mother in a savings account in a bank in behalf of the minor child. Instead of depositing the money as provided by order of court, the respondent wrote a letter to Mrs. Ewers advising that the sum "has been invested in stock bearing interest at six percent per annum." As a matter of fact, no investment of any kind was made by the respondent for the benefit of the minor child. From the findings it appears that the respondent repaid the money in full sometime between May 1960 and December 1960.

### RHODE MATTER

In the spring of 1959 the respondent was retained by Mrs. Joan Rhode to represent her in connection with a claim growing out of the death of her husband, which resulted from an accident while he was riding as a passenger in an automobile owned and driven by one Jerome DeLong. DeLong had limited insurance coverage, and a settlement in the sum of $11,000 was effected, as a result of which $10,000 was to be paid by the insurance company and $1,000 was to be paid by the defendant personally. By order of the district court approving the settlement, $5,539 was to be paid to the widow and each of the four children was to receive $750, which amounts were to be invested for the minors in United States Savings Bonds. It is unnecessary to

go into the complicated and devious actions of the respondent following the settlement of this claim. It is sufficient to say that they involved forgery of the signature of his client, misrepresentations with reference to his client's rights, and appropriation of his client's funds to his own use. There remained unpaid to Mrs. Rhode at the time of the hearing the sum of $4,134.11.

### EDITH WORKMAN SHIPMAN ESTATE

The respondent was retained as attorney to probate the estate of Edith Workman Shipman, who died in June 1960. On or about December 29, 1960, a check was made to E. Leo Hebert, executor, and S. A. Gross in the sum of $5,194.48. The respondent forged the endorsement of Hebert, cashed the check, and converted the money to his own use.

### SANDRA TRUSHINSKI MATTER

In December 1960 the respondent represented Leonard Trushinski and his minor daughter Sandra in her personal injury claim. The claim was settled for $1,400, and the district court approved the settlement and ordered that a balance of $981 be deposited in a savings and loan association in St. Cloud. The respondent in fact converted this sum to his own use and restitution has not been made.

### DELMER SCHMIDT MATTER

The respondent was retained to represent Delmer Schmidt in a workmen's compensation matter, which was settled for $1,015.41. The settlement was paid by check payable to the father of the client and respondent. He forged the endorsement of his client's father, deposited the check to his own account, and, according to the referee's findings, still owes his client the sum of $689.75.

### ARNOLD BILLIG MATTER

In August 1959 the respondent was retained to represent one Arnold E. Billig, a minor, in connection with personal injuries arising out of an automobile accident. The matter was settled August 14, 1959, for $5,500. The order approving settlement provided for distribution of the proceeds. The respondent received a draft in payment of the set-

tlement payable to the minor's father. The respondent forged the father's endorsement, cashed the check, and deposited the money to his own account. At the time of hearing there remained unpaid to the client the sum of $1,703.92.

## HAROLD VOIT MATTER

In December 1959 the respondent was attorney in the estate of Harold Voit in proceedings pending in the Probate Court of Stearns County. In connection with this matter he received a draft from the Metropolitan Life Insurance Company of New York in the sum of $780.26. He forged the signature of the payee of the draft and deposited the money in his own account. Respondent concedes that of this amount there remains $546.66 which he has not returned to the estate.

## ELIZABETH MILLS DIVORCE CASE

In February 1959 the respondent represented Elizabeth Mills in a divorce action. In connection with this proceeding he received $3,424.97 in two checks, being the proceeds of the sale of certain real estate. One check in the sum of $2,000 was received August 8, 1960, and the other for the balance was received on October 4, 1960. As of February 9, 1961, there remained unpaid to his client the sum of $1,468.17.

## JOHN S. GRUBER ESTATE

The respondent was retained by the representative of the estate of John S. Gruber, decedent. He received in behalf of the estate $3,750, represented by two drafts, one from the Postal Life and Casualty Insurance Company of Kansas City, Missouri, for $2,500 and the other from the Old American Insurance Company for $1,250. The referee found "that respondent endorsed the payee's name on the draft for $1,250.00 and cashed it; that respondent converted $854.40 of the money belonging to this estate, and that no part of said amount has been paid."

## SANDRA MIDDENDORF MATTER

The respondent represented Sandra Middendorf, a minor, who was injured in an automobile accident. He settled her claim for $700. The

draft was made payable to the minor's parents. The referee found "that respondent endorsed the names of the payees on the draft, cashed it, and used the money to pay obligations of his own; that there is due and owing to the said Sandra Middendorf the sum of $272.58, no part of which has been paid."

## MISCELLANEOUS MATTERS

The referee further found that the respondent had collected various amounts of money for certain clients and appropriated the proceeds to his own use. The referee estimated that the amount so misappropriated comes to $662.82.

The referee further found: "That respondent has no money at this time; that there are two outstanding checks signed by him which have not been paid for want of funds, one to Ross Vesser Funeral Home for the sum of $1,075.00, and one to Mr. and Mrs. Thomas Gottwalt for $300.00."

The respondent attempts to explain his conduct by alleging in his answer that his brother and brother-in-law were engaged in the operation of a motor truck sales and service business in the city of St. Cloud and that "said business experienced serious financial difficulty." It seems to be his defense that in order to avoid financial embarrassment and to "preclude possible criminal prosecution" in connection with this business venture respondent used money which did not belong to him. Obviously this is no defense at all. His disgraceful and unethical conduct disqualifies him from continuing the practice of law. His shameful deceit, conversion of funds, and practiced fraud make him wholly unfit to be a lawyer.

Judgment will be entered forthwith disbarring the said Sydney A. Gross and striking his name from the roll of attorneys of this state.

Let judgment of disbarment be entered.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.