### In the Matter of the Petition for Disciplinary Action Against Curtis E. AUSTIN.

### No. C1–82–948.

Supreme Court of Minnesota.

May 6, 1983.

Michael J. Hoover, Director, and William J. Wernz, Atty., Lawyers Professional Responsibility Bd., St. Paul, for petitioner.

Rapoport, Wylde & Nordby and Jack S. Nordby, Minneapolis, for respondent.

Heard, considered and decided by the court en banc.

PER CURIAM.

Pursuant to a hearing on a petition for disciplinary action, the referee appointed by this court, Judge Elmer J. Tomfohr, recommended disbarment of the respondent attorney. We adopt the recommendation.

Respondent Curtis E. Austin, age 57, has been a duly licensed attorney in this state since 1960. Since about 1976 he has been a sole practitioner with offices in Bloomington. In May 1982, the beneficiary of an estate that Austin was probating complained to the Lawyers Board of Professional Responsibility. An investigation ensued, followed by a panel hearing in July, which resulted in a petition being filed for disciplinary action. We denied the Board's request for immediate suspension and instead ordered an immediate referee hearing, which was held on November 10, 1982. The referee found violations of the Rules of Professional Conduct with respect to the commingling and misappropriation of client funds, the writing of checks against insufficient funds, the making of false statements to the Board's director, the keeping of inadequate books and financial records, and the respondent's false certification to this court that he was satisfying the requirement to keep proper books and records.

Respondent Austin probated the Thomas Parks estate. For about a 9-month period, from September 1981 to June 1982, respondent had on deposit in his trust account the sum of $52,272.76, representing the net sale proceeds of the Parks home. During these 9 months, Austin misappropriated up to $34,000 of this sum for his own use. The sum of $3,644.80 was used for car repairs, $1,158.02 was used for plumbing and heating work on respondent's lake cabin, and the balance for unidentified purposes, but apparently, in most part, to cover withdrawals for personal use of other clients'

funds out of the same trust account. Respondent admitted that the Parks estate was not an isolated instance of misappropriation, and that seven other misappropriations had occurred over the 6-year period respondent had been practicing as a sole practitioner. Respondent would "take the funds of another client and pay off that first client, and essentially roll over things for several transactions." Respondent has now made full restitution.

There was also evidence that about six checks were written on the trust account to clients and returned for insufficient funds. In addition, respondent engaged in check kiting.

When respondent Austin met for the first time in June 1982 with the Board, he represented, among other things, that all of the Parks estate monies had been distributed as of that day. He further denied having deposited funds of the Parks estate in his trust account rather than in an estate account and stated that an NSF check issued to one of the trust beneficiaries was drawn on his personal account and represented a personal loan to that beneficiary. These statements were false. Respondent also asked one of the Parks estate beneficiaries to write a letter to the Board stating that the check he had received as distribution of estate monies was not drawn on the trust account, when, in fact, it was. The beneficiary refused to write the letter.

Respondent Austin admits he did not keep general or subsidiary ledgers, receipts or disbursement journals for his trust account, or monthly reconciliation from 1976 until 1981 as required by Opinion 9 of the Board and DR 9–103(A). Nonetheless, each year when he renewed his attorney registration with the Clerk of the Supreme Court for the years 1977 through 1980, respondent signed a document certifying that he did, in fact, maintain the required books and records, thereby violating DR 9–103(B).

In mitigation, respondent provided several witnesses, friends and business acquaintances, who testified to Austin's good character, honesty, professional competence and integrity, despite their knowledge of the disciplinary violations to which Austin admitted. Two lawyers with whom respondent had previously shared office space and who have known him since 1970, were willing to associate with Austin in any case, handle his client funds and generally supervise his practice. Austin has also, in midsummer 1982, retained an accountant to conform his books and records to the requirements of Opinion 9 of the Minnesota Lawyers Professional Responsibility Board (1976). Judge Tomfohr noted in his report that he believed the respondent had finally been "forced to face realities" and that the public would likely be protected from further misdeeds if respondent were subjected to supervised probation. Nonetheless, the referee concluded that disbarment was the appropriate and justifiable recommendation, citing *In re Application for Discipline of Hanson,* 258 Minn. 231, 103 N.W.2d 863 (1960).

While each case is different, in cases of extensive misappropriation of client funds, this court has most often ordered disbarment. *In re Moberly,* 319 N.W.2d 720 (Minn.1982); *In re Okerman,* 310 N.W.2d 568 (Minn.1981); *In re Wackerbarth,* 287 N.W.2d 651 (Minn.1979); *In re Primus,* 283 N.W.2d 519 (Minn.1979); *In re Cohen,* 290 Minn. 500, 186 N.W.2d 168 (1971); *In re Swiggum,* 267 Minn. 548, 125 N.W.2d 169 (1963); *In re Gross,* 260 Minn. 160, 109 N.W.2d 57 (1961); *In re Hanson,* 258 Minn. 231, 103 N.W.2d 863 (1960); *In re O'Malley,* 225 Minn. 387, 30 N.W.2d 693 (1948); *In re Clover,* 208 Minn. 238, 293 N.W. 300 (1940); *In re Kanter,* 181 Minn. 65, 231 N.W. 396 (1930); *In re George,* 172 Minn. 347, 215 N.W. 425 (1927). The rationale for this severe sanction in misappropriation cases is that:

> Courts are charged with the duty of controlling the qualification and conduct of attorneys at law in order that there may be no compromise whatever of the moral and ethical standards upon which the functioning of our legal system depends. The purpose of disciplining an attorney is not to punish him, but to guard the administration of justice and to

protect the courts, the legal profession, and the public. [Citation omitted.] The public interest is and must be the paramount consideration; and the primary duty of the court must be protection of the public. Clear violation of a lawyer's duties to his clients and to the public compels an order of disbarment. The enlistment of a natural human sympathy for respondent's unrelated misfortune cannot be permitted to deter us from performance of this duty.

*In re Hanson,* 258 Minn. 231 at 233, 103 N.W.2d 863 at 864 (1960).

In cases involving misappropriation where we have ordered a sanction less severe than disbarment, substantial mitigating circumstances have existed. For instance, in *In re Shaw,* 298 N.W.2d 133 (Minn.1980), an attorney was publicly reprimanded, placed on supervised probation for a minimum of 3 years, and fined $5,000 for commingling and conversion of client funds; failure to maintain a trust account and false certification to the supreme court of proper recordkeeping. After noting that misappropriation of client funds mandates a severe sanction and cannot be tolerated notwithstanding restitution, we did not impose disbarment in *Shaw* because the conversion consisted of a single event and was for only a short time, several months. We noted further that full restitution had been made and that the respondent otherwise had a good reputation and had cooperated fully with the Board's investigation.

We conclude that the mitigating circumstances here do not justify a less severe sanction than disbarment, such as the supervised probation that respondent urges. The commingling and misappropriations were substantial and took place over a long period of time. In addition, there are other serious aggravating violations, including the attempt to have another person, a beneficiary of the estate respondent was probating, make a false statement to the Board.

Giving due weight to the referee's recommendation and having in mind, as we have stated in numerous cases, that maintenance of public confidence in the legal profession requires the strictest discipline in misappropriation cases, we conclude that respondent must be, and hereby is, disbarred.

Disbarred.

COYNE, J., took no part in the consideration or decision of this case.