In re Petition for Disciplinary Action against Mark A. SAMPSON, an Attorney at Law of the State of Minnesota.

No. CO–86–951.

Supreme Court of Minnesota.

July 2, 1987.

Mark A. Sampson, pro se, Fridley, for appellant.

Kenneth L. Jorgensen, Asst. Director, St. Paul, for respondent.

## PER CURIAM.

An original petition for disciplinary action against Mark A. Sampson was filed on May 16, 1986. A hearing before Supreme Court Referee Joanne M. Smith was held on September 11, 12, and 15, 1986. The referee recommended a 6–month suspension and 2 years' probation as the appropriate discipline.

After the referee's findings of fact, conclusions, and recommendation were filed on October 13, 1986, further allegations, including misappropriation of client funds and abandonment of Sampson's law practice, were brought to the director's attention.

On October 22 and 23, 1986, the director filed petitions for appointment of a trustee for Sampson's client files and for Sampson's temporary suspension pursuant to Rules 16 and 27, Rules on Lawyers Professional Responsibility. On October 23, 1986, this court appointed trustees and on October 28, 1986, Sampson was temporarily suspended from the practice of law.

The director filed a supplementary petition for disciplinary action on December 18, 1986. Sampson was served by publication in *Finance and Commerce* and by mail at his last known address. He did not answer and, therefore, the allegations are deemed admitted. R.Law.Prof.Resp. 13(c).

On February 25, 1987, this matter was remanded to the referee who filed her findings of fact, conclusions, and recommendations on March 24, 1987. A copy was served on Sampson by mail at his last known address. Because neither Sampson nor the director ordered a transcript of either proceeding, the referee's findings of fact and conclusions are conclusive. R.Law.Prof.Resp. 14(d). We find disbarment to be the appropriate judgment.

Respondent Mark A. Sampson was admitted to practice law in Minnesota in 1978. He began as a solo practitioner, but hired one associate in 1983 and another in 1984.

Kenneth and Hazel Bloom retained Sampson in late 1984 to assist them in satisfying their home mortgage. He made repeated misrepresentations to the Blooms that led them to believe that their mortgage had been satisfied when it had not. Sampson also provided Kenneth Bloom with both a document which he falsely represented to be a copy of an authentic mortgage satisfaction and a letter stating that the Bloom mortgage had been satisfied when, in fact, it had not. During the disciplinary investigation, Sampson made false statements under oath concerning his misrepresentations to the Blooms. He also failed to identify properly and retain the Blooms' funds in his trust account.

Sampson also failed to communicate adequately with clients. Kam Sang Tang retained Sampson in August 1979 to commence an action against a borrower for default on a promissory note. Tang filed an ethics complaint against Sampson in 1982, and Sampson was issued an admonition for failing to communicate adequately with Tang. He also failed to communicate properly with Tang between October 1982 and November 1985.

Diana Franks also retained Sampson on April 11, 1985, to cancel a contract for deed. Sampson failed to communicate properly with Franks and also failed to return promptly Franks' papers on request.

Daniel and Kelli Spackman retained Sampson to represent them in the purchase of a home. When Sampson discovered that the seller was unable to obtain title insur-

ance, he offered to prepare a title opinion for the Spackmans or reimburse them for title insurance. He failed to do either.

On March 17, 1986, Sampson's sworn statement was taken in response to the Blooms' complaint. At that time, he presented trust account bank statements which he falsely represented to be original bank statements for his IOLTA trust account. He also falsely testified regarding these statements at the referee's hearing. On October 21, 1986, the director's office obtained the original statements which showed overdrafts and insufficient funds.

Sampson also misappropriated client funds. These misappropriations included: $36,113 in medical expense funds from Patrick G. and Barbara A. Hanle, who had retained him to bring a personal injury action on behalf of their son; between $52,000 and $60,000 from Betty S. Bailey's personal injury judgment; $11,907.60 from Fern W. Fisher's condemnation award; $12,813.12 from a condemnation award to Robert E. and Burnice L. Case and their mortgagee; and $48,502.45 [1] which Elaine Shirley had given him to cure a contract for deed default.

Sampson also misappropriated funds from estates he was retained to probate. These misappropriations included: $15,330.99 from the Nordell estate; $44,863.20 from the Roettger estate; and $30,239.63 from the Blumer estate. Sampson also misappropriated funds of his marital dissolution clients, including $48,002.54 belonging to his client, David Furstenberg, and $3,014.87 of the money that his client, Michael Berneck, gave him to purchase Berneck's ex-wife's interest in their home.

Sampson further misappropriated funds deposited in the law fund trust account by his associate, James Phillips. These funds included $3,091.61 from the Chapman estate, which Phillips was retained to probate, and $18,947.76 belonging to Patricia S. Mulroy, who had retained Phillips to sell her home and divide the proceeds with her ex-husband.

Sampson also made misrepresentations to the following clients: Patrick G. and Barbara A. Hanle, Betty S. Bailey, Fern W. Fisher, Robert E. and Burnice L. Case, David Furstenberg and Martin H. Lueders.

With respect to the Lueders matter, Sampson misrepresented to Lueders that a bond was required in an action brought against Lueders' company and when Lueders gave him $5,000 to secure a bond, Sampson misappropriated the money.

Sampson also misappropriated approximately $113,000 from, at least, ten other clients for a total of approximately $450,000. Sampson's trust account was closed by the bank on October 16, 1986, because of overdrafts.

The referee concluded that Sampson had violated numerous provisions of both the Minnesota Code of Professional Responsibility and the Minnesota Rules of Professional Conduct. She recommends that Sampson be disbarred, and the director concurs in this recommendation.

The purpose of attorney discipline is "to protect the public and the court and to serve as a deterrent against future misconduct." *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn.1983). This court considers the nature of the respondent's misconduct and the extent of the harm he has caused the public and the legal profession. *In re Agnew*, 311 N.W.2d 869, 872 (Minn.1981). "In selecting the appropriate sanction, [this court endeavors] to protect the public from future harm and to preserve the legal profession's most precious resource—public confidence in the judicial system." *Id.* (citing *In re Rerat*, 232 Minn. 1, 63–64, 44 N.W.2d 273, 304 (1950)). This court has also stated that "[c]lear violation of a lawyer's duties to his clients and to the public compels an order of disbarment." *In re Hanson*, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960).

Misappropriation of client funds and misrepresentation to those clients is a violation of a lawyer's duties to his clients. In cases

---

**1.** This amount differs from the sum noted in the referee's findings, which appears to be the product of a mathematical error.

of extensive misappropriation, "this court has most often ordered disbarment." *In re Austin,* 333 N.W.2d 633, 634 (Minn.1983) (citing *In re Moberly,* 319 N.W.2d 720 (Minn.1982)); *In re Okerman,* 310 N.W.2d 568 (Minn.1981); *In re Wackerbarth,* 287 N.W.2d 651 (Minn.1979); *In re Primus,* 283 N.W.2d 519 (Minn.1979); *In re Cohen,* 290 Minn. 500, 186 N.W.2d 168 (1971); *In re Swiggum,* 267 Minn. 548, 125 N.W.2d 169 (1963); *In re Gross,* 260 Minn. 160, 109 N.W.2d 57 (1961); *In re Hanson,* 258 Minn. 231, 103 N.W.2d 863 (1960); *In re O'Malley,* 225 Minn. 387, 30 N.W.2d 693 (1948); *In re Clover,* 208 Minn. 238, 293 N.W. 300 (1940); *In re Kanter,* 181 Minn. 65, 231 N.W. 396 (1930); *In re George,* 172 Minn. 347, 215 N.W. 425 (1927)).

When this court has imposed sanctions less than disbarment for extensive misappropriation, there have been substantial mitigating factors. *See In re Austin,* 333 N.W.2d 633, 635 (Minn.1983). In *In re Shaw,* the misappropriation was a single incident and continued for only a short time. Further, Shaw made full restitution and completely cooperated with the director's investigation. *See In re Shaw,* 298 N.W.2d 133, 135 (Minn.1980). None of these factors is present here. Sampson coverted the funds of over 20 different clients, many of them after disciplinary proceedings were commenced; he has not made restitution; he has lied to the director and failed to answer the director's supplementary petition.

Even though respondent is absent from these proceedings, that fact does not violate the due process to which attorneys subject to disciplinary investigations are entitled. *See In re N.P.,* 361 N.W.2d 386, 394 (Minn.1985). The United States Supreme Court has emphasized the notice and opportunity-to-be-heard components of due process when assessing the constitutionality of disbarment proceedings. *See In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). However, extensive efforts were made to contact Sampson in this case, including publication and notice addressed to his last address. Moreover, this case has garnered extensive media publicity. If Sampson did not receive notice, it is only because of his own decision to abandon his law practice and flee the state.

In view of Sampson's many serious violations of the disciplinary rules, the referee recommends disbarment. This court gives great weight to these recommendations. *See In re Fling,* 316 N.W.2d 556, 559 (Minn.1982). We find no other relief to be appropriate except disbarment. So ordered.