Charles F. FREIDRICHS, Appellant,

v.

WESTERN NATIONAL MUTUAL INSURANCE COMPANY, et al., Respondents.

No. CX–87–126.

Court of Appeals of Minnesota.

Aug. 11, 1987.

Gary E. Stoneking, Hvass, Weisman & King, Chartered, Minneapolis, for appellant.

James T. Martin, Robert W. Gislason, Gislason, Martin & Varpness P.A., Edina, for respondents.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE *, JJ.

## OPINION

FOLEY, Judge.

Appellant Charles L. Freidrichs, an at-will employee, commenced this action for wrongful discharge against his former employer claiming that his discharge was impermissibly based on his refusal to violate the law. Respondent Western National Mutual Insurance Company moved for judgment on the pleadings pursuant to Minn.R.Civ.P. 12.03. The trial court granted Western's motion. Judgment was subsequently entered for Western, dismissing Freidrichs' complaint with prejudice.[1]

During pendency of this appeal, the Minnesota Supreme Court decided *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569 (Minn.1987), *aff'g* 396 N.W.2d 588 (Minn.Ct.App.1986). The court held that an at-will employee may bring a wrongful discharge action against the employer when discharge was based on the employee's refusal to violate the law. In accordance with *Phipps*, we reverse and remand.

## FACTS [2]

Western is a multi-lines casualty insurer which provides first party boiler insurance. In that connection, Western employs licensed pressure vessel inspectors who monitor manufacturing procedures on a per contract basis. These inspectors insure that each vessel meets the rigid safety standards established by the American Society of Mechanical Engineers (ASME). Freidrichs was hired by Western as a pressure vessel inspector in 1977. It is undisputed that Freidrichs was an "at-will" employee.

Between October 1981 and February 1982, Freidrichs performed inspections at manufacturing facilities operated by Trinity and Weston. Freidrichs alleged in his March 1982 complaint that his inspections at Trinity and Weston revealed certain violations of ASME standards. He further alleged that when he informed Western employees of these violations, he was told to refrain from reporting them and placed on probation until "his attitude improved."

In its answer, Western admitted that Freidrichs had reported violations. Western asserted, however, that possible violations of ASME standards were known prior to Fredrichs' inspection of Trinity and that Trinity had already taken action to correct the problem. Western denied warning Fredrichs to refrain from reporting the violations and alleged that he was placed on probation for "failure to properly carry out and perform his duties as an inspector."

Fredrichs was discharged from Western's employ on March 3, 1982. He claims the discharge was retaliatory, in violation of public policy and a breach of Western's duty of good faith and fair dealing. Western denied that its actions were retaliatory and alleged that discharge was justified by Freidrichs' misconduct, violation of company policy and inability to maintain a proper working relationship with its customers and clients.

The trial court rejected Freidrichs' claim that his discharge was wrongful because it violated public policy as set forth in Minn. Stat. §§ 183.59–.60 (1984) (providing penalties for violations in the construction, repair, sale and inspection of boilers or pres-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. The parties stipulated to dismissal of Freidrichs' tortious interference with contract action against two other defendants, Trinity Industries, Inc. and B.M.M. Weston, Inc.

2. The trial court did not address Western's alternate motion for summary judgment. Accordingly, only facts set out in the complaint and answer will be set forth in this opinion. For similar reasons, we will not examine extraneous matters submitted by Western in support of its motion for summary judgment on appeal.

sure vessels). Instead, the trial court adhered to the general rule in Minnesota, prior to *Phipps*, that an "at-will" employee may be discharged for any reason or no reason at all absent prohibited discrimination, union contract, or a contract specifically allowing termination only "for cause."

The trial court further rejected Freidrichs' claim that Western breached a covenant of good faith which existed in the employment contract, finding no such covenant in employment at-will situations in Minnesota.

This Court is bound by the precedent established by the Supreme Court of Minnesota. The creation of a new tort based on the wrongful termination of an employee, or the recognition of a covenant of good faith in an at-will employment situation must await action taken by either the legislature or the Minnesota Supreme Court. Accordingly, since plaintiff's Complaint fails to state a cause of action upon which relief can be granted, defendant's motion for judgment on the pleadings is granted.

### ISSUE

In light of *Phipps*, did the trial court err in granting Western's motion for judgment on the pleadings?

### ANALYSIS

In *Phipps*, a gas station attendant employed on an at-will basis claimed that he was wrongfully discharged for refusal to dispense leaded gasoline into a vehicle equipped to receive only unleaded gasoline, in contravention of the federal Clean Air Act, 42 U.S.C. § 7401 *et seq.* (1983). *Phipps*, 408 N.W.2d at 571. The employer moved for judgment on the pleadings and the trial court granted the motion.

On appeal, this court was asked to decide whether Minnesota law recognized an action for wrongful discharge by an at-will employee who is terminated for refusing to violate a law and, if so, whether grounds for maintaining the action were present as applied to Phipps' discharge. We answered both questions in the affirmative, concluding initially that when an at-will employee is discharged "for reasons that contravene a clear mandate of public policy," the employee has an action for wrongful discharge against the employer. *Phipps*, 396 N.W.2d at 592.

Applying this "public policy" exception to the facts alleged in the pleadings, we held that the employee had stated a cause of action for wrongful termination under the Clean Air Act. We also held that a statement by the employer may have defamed the employee. Judgment on the pleadings for the employee was therefore reversed with leave to amend the complaint to allege malice. *Id.* at 595.

The supreme court accepted review of the case and affirmed the decision in its entirety. *See Phipps*, 408 N.W.2d 574. The court noted from the outset of its analysis that the policy question of Minnesota's alignment with jurisdictions recognizing an action for wrongful discharge to some extent was resolved by the enactment of Minn.Stat. § 181.932, subd. 1. *See* 1987 Minn. Laws ch. 76, § 2. Therefore, the only remaining issue was whether the public policy exception applied to Phipps' November 1984 discharge.

Finding similarity between Phipps' refusal to violate the Clean Air Act and an Illinois case where an employee refused to work with radioactive materials handled in violation of federal regulations, the court stated:

> The Clean Air Act is similarly a clearly mandated public policy to protect the lives of citizens and the environment, and we hold that an employee may bring an action for wrongful discharge if that employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates *any* state or federal law or rule or regulation adopted pursuant to law.

*Phipps*, 408 N.W.2d at 571 (emphasis supplied).

In so holding, the court rejected the employer's claim that remedies contained within the Clean Air Act were sufficient to vindicate the underlying public policy, find-

ing ample support in other jurisdictions for additional common law protection.

Western urges this court to find particular significance in the supreme court's reliance on law in effect *at the time of Phipps' discharge.* It argues that because Freidrichs was discharged in March 1982, the 1980 version of Minn.Stat. §§ 183.59 and 183.60 controls the outcome of this case, not the amended version of the statutes which took effect April 15, 1982 or the 1984 version utilized by the trial court. Western contends that because the statutes make no reference to penalties imposed for false certification or for violation in construction or sale of "pressure vessels" until the 1982 amendments, Freidrichs' claim must fail.

We are not entirely in agreement. Although we must look to the statute in effect at the time of discharge to discern the applicability of the public policy exception, we do not believe the absence of any reference to "pressure vessels" in the 1980 statutes is fatal to Fredrichs' claim. Former section 183.59 stated in relevant part:

> Every inspector who wilfully certifies falsely regarding any steam boiler or its attachments or the hull and equipments of any steam vessel * * * is guilty of a felony.

Minn.Stat. § 183.59 (1980). The amended version of section 183.59 provided in relevant part:

> Every inspector who wilfully certifies falsely regarding any ~~steam~~ boiler or its attachments, *or pressure vessel,* or the hull and equipments of any steam vessel * * * is guilty of a ~~felony~~ *misdemeanor.*

1982 Minn. Laws ch. 379, § 23 (changes or additions indicated by underline, deletions by strikeout).

Former section 183.60 read in pertinent part:

> Every person who constructs a boiler or steam pipe or iron or steel plates known to be faulty or imperfect, or drifts any rivet hole to make it come fair, or who delivers any such boiler for use, knowing it to be imperfect in its flues, flanging, riveting, bracing, or in any oth-

er of its parts, is guilty of a gross misdemeanor.

Minn.Stat. § 183.60 (1980). As amended, section 183.60 provided:

> *Subdivision 1.* CONSTRUCTION VIOLATION. *Every person who constructs a boiler, boiler piping, or a pressure vessel so as not to meet the minimum construction requirements of the American Society of Mechanical Engineers boiler and pressure vessel code, and the rules of the division of boiler inspection adopted by the department of labor and industry is guilty of a gross misdemeanor.*

> \* \* \* \* \* \*

> *Subd. 3.* SALE VIOLATION. *Every manufacturer, jobber, dealer or person selling or offering for sale a boiler or pressure vessel that does not meet the minimum construction requirements of the American Society of Mechanical Engineers boiler and pressure vessel code and the rules of the division of boiler inspection adopted by the department of labor and industry is guilty of a gross misdemeanor.*

1982 Minn. Laws ch. 379, § 24 (changes or additions indicated by underline).

Minn.Stat. §§ 183.375–.62 (1980) set forth boiler inspection, construction and operation standards and proscribed penalties for violation of these standards. Underlying all these statutes is an emphasis on public safety. This emphasis on public safety and protection of citizens in this state is a "clearly mandated public policy." *Phipps,* 408 N.W.2d at 571.

The 1982 amendments to sections 183.59 and 183.60 are not to be read in isolation but rather as part of the legislature's intent to further clarify inspection, construction and operation standards and to allow imposition of stiffer penalties for violation of these standards. *See* Minn.Stat. § 183.60 (1982) (language removed limiting penalty for construction violations to $200 fine); Minn.Stat. § 183.61, subd. 6 (1982) ($50 fine limitation removed on insurance companies that fail to comply with reporting standards).

Significantly, even with the 1982 amendments, Chapter 183 remained entitled "ELEVATORS AND BOILERS; REGULATIONS." If the addition of "pressure vessels" to sections 183.59 and 183.60 substantively changed the meaning of these statutes, we think the title of the chapter would have reflected this change.

In light of *Phipps*, we must reverse judgment on the pleadings in this case and remand for further proceedings. Well-pleaded material facts are assumed as true on appeal. *Phipps*, 396 N.W.2d at 594 (citing *Grier v. Estate of Grier*, 252 Minn. 143, 145, 89 N.W.2d 398, 401 (1958)). Here, the complaint sufficiently alleges facts to support Freidrichs' action for wrongful discharge.

### DECISION

Judgment on the pleadings for Western is reversed and the matter remanded for further proceedings.

Reversed and remanded.